DALLAS COUNTY APPRAISAL DISTRICT, Appellant,

v.

FUNDS RECOVERY, INC. d/b/a Asset Resolution Corporation, Appellees.

No. 05–93–01575–CV.

Court of Appeals of Texas, Dallas.

Aug. 31, 1994.

Mike Tabor, Henry J. Voegle, Robert J. Davis, Dallas, for appellant.

Jay S. Fichtner, Dallas, for appellee.

Before LAGARDE, BURNETT, and MALONEY, JJ.

## OPINION

LAGARDE, Justice.

The Dallas County Appraisal District (the District) appeals from the trial court's grant of mandamus ordering it to "accept and process" the property tax exemption applications filed by appellee Funds Recovery, Inc. d/b/a Asset Resolution Corporation (A.R.C.) under the Property Tax Code (the Code).[1] Because we conclude that the trial court lacked jurisdiction, we dismiss.[2]

---

1. Tex.Tax Code Ann. §§ 1.01–43.04 (Vernon 1992 & Supp.1994).

2. At trial, the Director of Revenue and Taxation for the City of Dallas and the Tax Assessor-Collector of Dallas County were also defendants; however, neither pursued an appeal of the trial court's order. The District and A.R.C., therefore, are the only parties to this appeal.

After reviewing public property tax records to find homeowners with unclaimed homestead exemptions, A.R.C. contacts these homeowners to secure an authorization and appointment to act as the homeowners' agent to obtain their legally entitled refunds. A.R.C. is compensated for its service. The District is a political subdivision of the State of Texas that processes tax exemption applications through its chief appraiser.

In October 1991, A.R.C. filed with the District a large number of applications for individual residential homestead exemptions for the 1990 and 1991 tax years. Each application contained the required Appointment of Agent form promulgated by the state comptroller's office under authority of the Code.[3] Through its president, A.R.C. had signed the Appointment of Agent forms appointing *itself* as tax agent for each homeowner. Each application also contained a form signed by the homeowner ("Homeowner Authorization") containing the following:

> I hereby authorize and appoint A.R.C. to act as my agent in accordance with V.T.C.A. Tax Code Section 1.111, to do anything legally reasonably necessary to apply for and obtain the funds to which they believe I am entitled, to use my name, to receipt for me and endorse on my behalf checks, drafts or instruments, negotiable or otherwise.

On October 29, 1991, the District returned all the applications to A.R.C. with a letter from Junell Pogue, Manager of Exemptions for the District. The letter stated that A.R.C.'s Homeowner Authorizations did not authorize A.R.C. to appoint tax agents. The letter explained that "the Appointment of Agent form[s] must be signed by one of the following: the property owner; a person the owner has *specifically authorized* to name tax agents; or by a corporate officer (if the owner is a corporation)."[4] The letter requested A.R.C. to resubmit the exemption applications with appropriate signatures. The letter noted that those "applications that

were submitted are not valid and new applications will need to be filed with this office."

■ A.R.C. petitioned the district court for a writ of mandamus and other relief.[5] A.R.C. alleged that "[d]espite written and oral *demands* made by [A.R.C.] *upon [the District],* it has persisted in its *refusal to accept* applications for refund from [A.R.C.] and *refuses to process* applications for refund filed by [A.R.C.]." Neither A.R.C.'s petition nor its summary-judgment evidence reflected any appeal of the District's action to the Appraisal Review Board, the protest board established by the Code. *See* Tex.Tax Code Ann. §§ 6.41, 41.41 (Vernon 1992). A.R.C. prayed, in part, that the District "immediately receive and process" the 1990 and 1991 applications, pay A.R.C. and its clients monetary damages, and indemnify A.R.C. for its attorney's fees.

Both parties moved for summary judgment on the mandamus claim. A.R.C. based its motion on the grounds that it "complied with all of the provisions, conditions and requirements of the Texas Property Tax Code in acting as tax agent for its clients, and therefore, there is no issue as to any material fact to preclude summary judgment." A.R.C. contends, essentially, that, as a matter of law, the authority delegated to it by the Homeowner Authorizations is broad enough to encompass the naming of tax agents.

The District based its motion for summary judgment in the mandamus action on an absence of a clear legal duty to perform nondiscretionary acts. It argues that because the forms submitted did not *specifically grant* authority to name tax agents, the District exercised its discretion to determine the sufficiency of the forms. The District moved for summary judgment on A.R.C.'s remaining claims based on the doctrine of sovereign immunity. After a hearing, the trial court (i) granted A.R.C. summary judgment for mandamus relief, (ii) denied the District summary judgment on the mandamus action, and

---

3. *See* Tex.Tax Code Ann. § 1.111(h) (Vernon 1992).

4. All emphasis supplied by author unless otherwise noted.

5. A common-law mandamus action has three requisites: a legal duty to perform a nondiscretionary act, a demand for performance, and a refusal. *Stoner v. Massey,* 586 S.W.2d 843, 846 (Tex.1979).

(iii) granted the District summary judgment on A.R.C.'s remaining claims.

### Jurisdiction over Appeal

During oral argument, A.R.C. re-urged its presubmission motion to dismiss the appeal for lack of jurisdiction. A.R.C.'s motion challenged our jurisdiction over this appeal on the grounds that the District (i) failed to file a cost bond, (ii) filed a defective notice of appeal, and (iii) asserted an indefinite point of error. A motions panel of this Court denied A.R.C.'s motion without opinion. We conclude that A.R.C.'s jurisdictional arguments are meritless.

■ First, an appraisal district is exempt from filing an appeal bond. *Dallas County Appraisal Dist. v. Institute for Aerobics Research*, 751 S.W.2d 860, 861 (Tex.1988). As an intermediate appellate court, we are bound by supreme court authority that has not been overruled. *Howe State Bank v. Crookham*, 873 S.W.2d 745, 749 (Tex.App.—Dallas 1994, no writ). A.R.C. asserts, however, that the *Institute for Aerobics Research* opinion has been called into doubt by *Monsanto Co. v. Cornerstones Municipal Utility District*, 865 S.W.2d 937, 939 (Tex.1993). We disagree. *Monsanto* is a statutory construction case interpreting section 16.061 of the civil practice and remedies code. *Monsanto Co.*, 865 S.W.2d at 938. *Monsanto* does not overrule, or even question, the supreme court's *Institute for Aerobics Research* opinion interpreting section 42.28 of the tax code. We overrule A.R.C.'s first jurisdictional argument.[6]

■ Second, A.R.C. asserts that the District's notice of appeal was defective in identifying the appealed-from judgment. We overrule this argument as moot because the defect has been cured by an amended notice of appeal. *See* Tex.R.App.P. 46(f); 83.

■ Finally, A.R.C. asserts this Court lacks jurisdiction because the District's "point of error is too indefinite"[7] and "fail[ed] to comply with the briefing requirements." *See* Tex.R.App.P. 74. This Court has jurisdiction over any appeal where the appellant files an instrument that was filed in a bona fide attempt to invoke appellate court jurisdiction. *Grand Prairie Indep. Sch. Dist. v. Southern Parts Imports, Inc.*, 813 S.W.2d 499, 500 (Tex.1991) (per curiam) (quoting, in part, *Walker v. Blue Water Garden Apartments*, 776 S.W.2d 578, 581 (Tex. 1989)). We have already concluded that the District's notice of appeal was sufficient to vest this Court with jurisdiction over this appeal. Indefiniteness *in a brief* is not a jurisdictional defect. We overrule A.R.C.'s re-urged motion to dismiss the appeal for lack of jurisdiction.

### Subject Matter Jurisdiction

■ Jurisdiction over an appeal and subject matter jurisdiction, however, are two different concepts. Subject matter jurisdiction is fundamental error and may be raised for the first time on appeal. *Grounds v. Tolar Indep. Sch. Dist.*, 707 S.W.2d 889, 893 (Tex.1986); *see Texas Ass'n of Business v. Texas Air Control Bd.*, 852 S.W.2d 440, 445 (Tex.1993). We must inquire into our own jurisdiction, even if it is necessary to do so *sua sponte*. *White v. Schiwetz*, 793 S.W.2d 278, 281 (Tex.App.—Corpus Christi 1990, no writ). Appellate court jurisdiction of the merits of a case extends no further than that of the court from which the appeal is taken. *Pearson v. State*, 159 Tex. 66, 315 S.W.2d 935, 938 (Tex.1958). If the trial court lacked jurisdiction, then an appellate court only has jurisdiction to set the judgment aside and dismiss the cause. *See State ex rel. Kelly v. Baker*, 580 S.W.2d 611, 612–13 (Tex.Civ. App.—Amarillo 1979, no writ); *see also Fulton v. Finch*, 162 Tex. 351, 356, 346 S.W.2d 823, 827 (1961). Thus, on our own motion, we address the issue of jurisdiction.

---

6. Assuming, *arguendo*, that A.R.C.'s argument is correct, we could not dismiss for lack of jurisdiction without first providing the District an opportunity to file a cost bond. *Grand Prairie Indep. Sch. Dist. v. Southern Parts Imports, Inc.*, 813 S.W.2d 499, 500 (Tex.1991) (per curiam); *see* Tex.R.App.P. 46(f); 83.

7. The District's sole point of error is:

The District Court erred in granting the [A.R.C.'s] Cross–Motion for Summary Judgment and in failing to grant [the District's] Motion for Summary Judgment in its entirety.

 Our standard for reviewing subject matter jurisdiction requires the pleader to allege facts that affirmatively demonstrate the trial court's jurisdiction to hear the cause. *Texas Ass'n of Business,* 852 S.W.2d at 446. When reviewing subject matter jurisdiction *sua sponte,* we must construe the petition in favor of the pleader, and if necessary, review the entire record to determine if any evidence supports jurisdiction. *See id.*

 A.R.C.'s main contention in this suit is that it should not be required to resubmit its applications. A.R.C.'s argument is based on the premise that its agent authorization forms *are* sufficient as a matter of law to grant it the authority to name itself as tax agent for the homeowners. The District disagreed with A.R.C.'s interpretation of its agent authorization forms, concluding that those authorizations were not "specific" enough as required by the comptroller's form.

There is no dispute about the comptroller's authority to require specificity of a tax agent's authority. *See* TEX.TAX CODE ANN. § 1.111(h). At oral argument, A.R.C. stated that the only issue before us is a question of law. "Specificity," however, is an issue where reasonable minds can differ. We cannot conclude, therefore, that "specificity" is a pure question of law; thus, the doctrine of exhaustion of remedies is applicable. *Cf. Grounds,* 707 S.W.2d at 892.

Choosing to ignore any administrative remedies it had, A.R.C. challenged the District's decision through this mandamus action. We now turn to consider whether the Code provides A.R.C. an administrative remedy.

The Code requires the chief appraiser to "accept and approve or deny" applications for residence homestead exemptions. TEX.TAX CODE ANN. § 11.431(a) (Vernon 1992). The Code then explains in detail the duties of the chief appraiser's office regarding the exemption applications:

(a) The chief appraiser *shall determine* separately each applicant's right to an exemption. After considering the application and all relevant information, the chief appraiser shall, as the law and facts warrant:

(1) approve the application and allow the exemption;

(2) modify the exemption applied for and allow the exemption as modified;

(3) *disapprove the application and request additional information* from the applicant in support of the claim; or

(4) deny the application.

(b) If the chief appraiser requests additional information from an applicant, the *applicant must furnish it* within 30 days after the date of the request *or the application is denied.*

. . . . .

(d) If the chief appraiser modifies or denies an exemption, he shall deliver a written notice of the modification or denial to the applicant within five days after the date he makes the determination. He shall include with the notice a brief explanation of the procedures for protesting his action.

TEX.TAX CODE ANN. § 11.45 (Vernon 1992). A.R.C. admits that the chief appraiser is given broad discretion in determining the applicant's right to an exemption, "provided it exercises its discretion 'as the law and facts warrant.'" *See id.* § 11.45(a). Relying on subsection (a), A.R.C. asserts that the chief appraiser has "refused" to "receive and determine" its applications.[8]

Section 11.45(a) of the Code expressly grants the chief appraiser four options in evaluating exemption applications. One of those options is to disapprove the application and request additional information. TEX.TAX CODE ANN. § 11.45(a)(3) (Vernon 1992). The District's rejection letter stated that the applications as submitted were invalid and requested their resubmission with additional information. The letter explained the deficiency in the applications and how it could be corrected. In our opinion, section 11.45(a)(3) of the Code authorized the District's action on A.R.C.'s applications.

---

**8.** Assuming, without deciding, that section 11.45(d) applies to the denial of an *application,* the rejection letter did not comply with section 11.45(d) of the Code; however, A.R.C. made no complaint of this deficiency at trial or on appeal.

A.R.C. was obligated to provide the requested additional information within thirty days; otherwise, the application would be "denied" by operation of law. *See* TEX.TAX CODE ANN. § 11.45(b) (Vernon 1992). A.R.C. provided no summary judgment evidence that it submitted the additional information to the District, arguing instead that it was unnecessary to submit the requested additional information. We conclude that the summary judgment evidence shows, under the Code's express provisions, that A.R.C.'s applications were denied by operation of law thirty days after the date of the rejection letter. Accordingly, the District has already "received and determined" appellee's applications.

The Code authorizes the District's appraisal review board to hear and determine protests by property owners about decisions of the District. TEX.TAX CODE ANN. § 41.41 (Vernon 1992); *see Dallas County Appraisal Dist. v. Lal,* 701 S.W.2d 44, 45 (Tex.App.—Dallas 1985, writ ref'd n.r.e.). The purpose of the administrative review procedures is to provide aggrieved taxpayers relief without the necessity of resorting to the courts. *Webb County Appraisal Dist. v. New Laredo Hotel, Inc.,* 792 S.W.2d 952, 954 (Tex.1990) (citing *Lal,* 701 S.W.2d at 47). The Code's procedures are exclusive regarding tax refunds. TEX.TAX CODE ANN. § 42.09(a)(2) (Vernon 1992); *see Shenandoah v. Swaggart Evangelistic Ass'n,* 785 S.W.2d 899, 903 (Tex. App.—Beaumont 1990, writ denied). An adverse decision of the appraisal review board is subject to review in district court by a trial *de novo.* TEX.TAX CODE ANN. §§ 42.01, 42.23 (Vernon 1992); *Lal,* 701 S.W.2d at 45–46.

Section 41.41 of the Code provides eight specific determinations by the District that may be protested by a property owner or agent to an Appraisal Review Board. *See*

TEX.TAX CODE ANN. § 41.41 (Vernon 1992). One of the enumerated protests is "denial to the property owner in whole or in part of a partial exemption." *Id.* § 41.41(4). Subsection (9) authorizes a protest of "any other action of the chief appraiser [or] appraisal district ... that applies to and adversely affects the property owner." *Id.* § 41.41(9). We conclude that subsections (4) and (9) of section 41.41 of the Code provide administrative remedies for the denial of A.R.C.'s exemption applications.[9]

 Under the exhaustion of administrative remedies doctrine, failure to comply with the administrative review procedures of the Code to their fullest extent precludes judicial review. *Webb County Appraisal Dist.,* 792 S.W.2d at 954; *Lal,* 701 S.W.2d at 46. These requirements are jurisdictional. *Appraisal Review Bd. v. International Church of Foursquare Gospel,* 719 S.W.2d 160, 160 (Tex.1986). An exception exists when the dispute involves a pure question of law. *Grounds,* 707 S.W.2d at 892.

We can find no evidence in the appellate record to support an inference that A.R.C. attempted any review under the Code.[10] Because A.R.C. did not exhaust its administrative remedies, it is precluded from challenging the denial of the exemptions in a judicial proceeding. *See Webb County Appraisal Dist.,* 792 S.W.2d at 954; *Northwest Tex. Conference v. Happy Indep. Sch. Dist.,* 839 S.W.2d 140, 143 (Tex.App.—Amarillo 1992, no writ) (citing *Keggereis v. Dallas Cent. Appraisal Dist.,* 749 S.W.2d 516, 519 (Tex. App.—Dallas 1988, no writ)). Without rationale or cited authority, one of our sister courts has concluded, however, that the failure to exhaust administrative remedies under the Code should result in a *denial* of a writ for mandamus, not its *dismissal. Watson v. Robertson County Appraisal Review Bd.,* 795

9. Assuming, *arguendo,* that we are incorrect that A.R.C.'s applications were "denied" by operation of law under section 11.45(b), subsection (9) of section 41.41 of the Code provides A.R.C. an administrative remedy for the District's refusal to "receive and process" its applications.

10. Our supreme court has noted the potential prejudice from the inability of a party to amend its pleadings if an appellate court *sua sponte* dismisses for lack of jurisdiction. *See Texas*

*Ass'n of Business,* 852 S.W.2d at 446. Although our review of the record and comments at oral argument convince us that A.R.C. did not pursue any administrative remedies, we would entertain affidavits asserting facts to the contrary in any motion for rehearing. *See* TEX.GOV'T CODE ANN. § 22.220(c) (Vernon 1988); *Jones v. Griege,* 803 S.W.2d 486, 488 (Tex.App.—Dallas 1991, no writ).

S.W.2d 307, 311 (Tex.App.—Waco 1990, no writ). *But see Employees Retirement Sys. v. McDonald,* 551 S.W.2d 534, 536 (Tex.Civ. App.—Austin 1977, writ ref'd) (failure to exhaust administrative remedies resulted in dismissal of writ of mandamus without prejudice to seek administrative relief); *Arnold v. City of Sherman,* 244 S.W.2d 880, 883 (Tex. Civ.App.—Dallas 1951, writ ref'd) (relator in no position to apply for writ of mandamus without exhausting administrative remedies).

■ A writ of mandamus is an extraordinary writ. However, "[a]n original proceeding for writ of mandamus *initiated in the trial court* is a civil action subject to trial and appeal on substantive law issues and the rules of procedure *as any other civil suit.*" *Anderson v. City of Seven Points,* 806 S.W.2d 791, 792 n. 1 (Tex.1991); *Griffin v. Wakelee,* 42 Tex. 513, 516 (1875) ("[T]here is no distinguishable difference in principle in the course of proceeding and result attained in it [a mandamus action] and any other suit in the District Court.")

We hold that the trial court lacked jurisdiction to issue the writ of mandamus in this case due to A.R.C.'s failure to exhaust its administrative remedies. Where the trial court does not have jurisdiction to render a judgment, the proper practice is for the reviewing court to set the judgment aside and dismiss the cause. *See Fulton v. Finch,* 162 Tex. 351, 356, 346 S.W.2d 823, 827 (1961); *State ex rel. Kelly,* 580 S.W.2d at 612–13. Accordingly, we set aside the trial court's judgment and dismiss the cause.