Katherine MILLS, et al., Petitioners,

v.

WARNER LAMBERT CO.,
et al., Respondents.

No. 03–1052.

Supreme Court of Texas.

Feb. 11, 2005.

Troy S. Martin III, Curtis L. Cukjati, Martin & Cukjati, San Antonio, Christa Brown, Austin, for petitioners.

Deborah A. Newman, Forman, Perry, Watkins, Krutz & Tardy, LLP, Houston, for respondent Bayer Corporation.

Richard H. Caldwell, Andrews & Kurth LLP, Houston, for respondents Del Pharmaceutical, Inc., and Del Laboratories.

M.C. Carrington, Mehaffy & Weber, Beaumont, for respondent Care Technologies, Inc.

Jack E. Urquhart, Joseph S. Cohen, N. Terry Adams, Beirne Maynard & Parsons, L.L.P., Houston, Richard A. Desevo, David Klingsberg, Thomas A. Smart, Kaye Scholer LLP, New York, NY, Wayne Peveto, The Peveto Law Firm, Orange, for respondents Warner–Lambert Company and Pfizer Inc.

PER CURIAM.

This case involves an interlocutory appeal of a class-certification order. The primary issue is whether the portions of the Federal Food, Drug, and Cosmetic Act (FDCA) regulating nonprescription drugs deprived the trial court of subject matter jurisdiction to hear claims regarding the efficacy of certain head-lice remedies. The court of appeals concluded that the FDCA preempted the class's state-law claims and deprived the trial court of jurisdiction to enter its class-certification order. We disagree with the court of appeals' conclusion that the trial court lacked subject matter jurisdiction. Ordinary preemption operates as an affirmative defense to a plaintiff's state-law claims but does not deprive state courts of jurisdiction over those claims. State-court jurisdiction is affected only when Congress requires that claims be addressed exclusively in a federal forum. *See San Diego Bldg. Trades Council v. Garmon,* 359 U.S. 236, 242–45, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959).

In this case, we conclude that the FDCA provision at issue is not one of the few statutes that require claims to be resolved exclusively in a federal forum. The relevant section of the FDCA contains no forum-preempting language and indicates no intent to vest exclusive jurisdiction in a federal forum. We therefore conclude that the FDCA did not deprive the trial court of subject matter jurisdiction. Because this is an interlocutory appeal, only the question of subject matter jurisdiction is before us at this time; consequently, we do not decide whether the FDCA would, through ordinary preemption, provide a full defense to the plaintiffs' claims. We reverse the court of appeals' judgment and remand the case to that court for consideration of the other issues raised on appeal. *See* Tex.R.App. P. 59.1.

The petitioners in this case are plaintiffs suing six pharmaceutical companies for breach of the implied warranty of merchantability of certain over-the-counter head-lice remedies. The plaintiffs argue that, as lice strains have developed resistance to the active ingredient in the companies' products, those products are no longer capable of effectively treating head-lice infestations and are therefore unfit for their ordinary purpose. *See* Tex. Bus. & Com.Code § 2.314(b)(3). The plaintiffs sought breach-of-warranty damages under

the Deceptive Trade Practices Act. *See* Tex. Bus. & Com.Code §§ 17.46(b), 17.50(a)(1). The defendants moved for summary judgment in the trial court, arguing that the FDCA preempted the plaintiffs' claims. The plaintiffs filed a cross-motion, asking the trial court to rule as a matter of law that the claims were not preempted. The court granted the plaintiffs' motion and struck the defendants' affirmative defense of federal preemption. The trial court subsequently certified a class of Texas consumers and adopted a trial plan. The pharmaceutical companies then brought this interlocutory appeal challenging the class-certification order. *See* Tex. Civ. Prac. & Rem.Code § 51.014(3).

Before examining whether the trial court's certification order complied with Texas Rule of Civil Procedure 42, the court of appeals first considered whether the trial court had jurisdiction to enter the certification order at all. 117 S.W.3d 488, 490; *see McAllen Med. Ctr., Inc. v. Cortez,* 66 S.W.3d 227, 231 (Tex.2001) (stating that "the interlocutory appeal statute does not supplant the constitutional requirement that the court of appeals have subject-matter jurisdiction"); *Pearson v. State,* 159 Tex. 66, 315 S.W.2d 935, 938 (1958) ("[T]he jurisdiction of the appellate court as to the merits of a case extends no further than that of the court from which the appeal is taken.").

The court of appeals concluded that federal law preempted the plaintiffs' claims and deprived the trial court of subject matter jurisdiction. 117 S.W.3d at 494. The court noted that the FDCA provides that no state "may establish or continue in effect" any "requirement" that "relates to the regulation" of an over-the-counter drug and that is "different from or in addition to, or that is otherwise not identical with, a requirement" under the FDCA.

*Id.* at 493 (quoting 21 U.S.C. § 379r). The court also noted that "[a]ppellees do not contest the fact that the products in question do indeed comply with the FDA-approved formula for nonprescription [head-lice remedies], and that the products were marketed in compliance with the appropriate approval process mandated by the FDA." *Id.* The court concluded that because "[i]n practical effect, the state law-suit would make unlawful the sale of a product formulated to comply with a federal requirement," the lawsuit would impose a state requirement "different from or in addition to" a requirement under the Act. *Id.* at 494. After the court concluded that the lawsuit was preempted under federal law, it then concluded, without further analysis, that the preemption deprived the trial court of subject matter jurisdiction. *Id.* We disagree.

Under the Supremacy Clause of the United States Constitution, the laws of the United States are "the supreme Law of the Land; ... any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2. If a state law conflicts with federal law, it is preempted and has no effect. *Maryland v. Louisiana,* 451 U.S. 725, 746, 101 S.Ct. 2114, 68 L.Ed.2d 576 (1981); *Am. Cyanamid Co. v. Geye,* 79 S.W.3d 21, 23 (Tex.2002). There are three ways that a state law may conflict with federal law and thus be preempted. *See Great Dane Trailers, Inc. v. Estate of Wells,* 52 S.W.3d 737, 743 (Tex.2001). First, "[a] federal law may expressly preempt state law." *Id.* (citing *Cipollone v. Liggett Group, Inc.,* 505 U.S. 504, 516, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992)). Second, "federal law or regulations may impliedly preempt state law or regulations if the statute's scope indicates that Congress intended federal law or regulations to occupy the field exclusively." *Id.* (citing

*Freightliner Corp. v. Myrick*, 514 U.S. 280, 287, 115 S.Ct. 1483, 131 L.Ed.2d 385 (1995)). Finally, state law is also impliedly preempted if it "actually conflicts with federal law or regulations," because "(1) it is impossible for a private party to comply with both state and federal requirements; or (2) state law obstructs accomplishing and executing Congress' full purposes and objectives." *Id.* In this case, defendants assert that the FDCA fits into the first category of express preemption as it expressly provides that no state "may establish or continue in effect" "any requirement" that "relates to the regulation" of an over-the-counter drug and that is "different from or in addition to, or that is otherwise not identical with, a requirement" under the FDCA. 21 U.S.C. § 379r.

■ Even if the defendants are correct that the FDCA preempts this state-law claim, however, it does not mean that the trial court lacked jurisdiction over the claim. Federal preemption "is ordinarily a federal defense to the plaintiff's suit" but does not ordinarily deprive a state court of jurisdiction. *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987). As a result, "[t]here are thus some cases in which a state law cause of action is preempted, but only a state court has jurisdiction to so rule." *Romney v. Lin*, 105 F.3d 806, 813 (2d Cir.1997) (denying rehearing). Consequently, we disagree with the court of appeals' conclusion that federal preemption, without more, would necessarily deprive the trial court of jurisdiction.

In support of their argument that preemption divests state courts of jurisdiction, the respondents cite several cases holding that federal law may "pre-empt conflicting state-court jurisdiction." *Int'l Longshoremen's Assoc. v. Davis*, 476 U.S. 380, 388, 106 S.Ct. 1904, 90 L.Ed.2d 389 (1986); *see also Gorman v. Life Ins. Co. of N. Am.*, 811 S.W.2d 542, 547 (Tex.1991). When the courts in these cases spoke of "preemption of jurisdiction," however, they were not referring to the applicability of federal law; rather, they referred to Congress's ability to require resolution of certain claims exclusively in a federal forum. *See Chappell v. SCA Servs., Inc.*, 540 F.Supp. 1087, 1095 (D.Ill.1982) (suggesting that "[f]ederal preemption ... should be distinguished from exclusive federal jurisdiction," because "[i]n the former, federal substantive law supplants state law but absent other provisions both state and federal courts have concurrent jurisdiction of actions arising under that law; in the latter, only the specified federal instrumentalities have jurisdiction of the matter, irrespective of the law to be applied.") (quoting 1A Moore's Federal Practice, & 0.160 at 189 (2d ed.1981)). Thus, in *Davis*, the United States Supreme Court held that the National Labor Relations Board had exclusive jurisdiction to hear certain labor claims, and that neither state courts nor federal courts had jurisdiction to hear a claim "which could have been, but was not, presented to the Labor Board." *Sears, Roebuck & Co. v. San Diego County Dist. Council of Carpenters*, 436 U.S. 180, 197, 98 S.Ct. 1745, 56 L.Ed.2d 209 (1978); *Davis*, 476 U.S. at 393, 106 S.Ct. 1904. Similarly, this Court held in *Gorman* that state courts had no jurisdiction over certain ERISA claims. *Gorman*, 811 S.W.2d at 547–49; *see also Southland Life Ins. Co. v. Estate of Small*, 806 S.W.2d 800, 801 (Tex.1991). Again, however, this decision rested on the creation of an exclusive federal forum rather than the existence of a preemption defense; Section 502 of ERISA provides that, with the exception of certain exempted actions, "the district courts of the United States shall have exclusive jurisdiction of civil actions under this subchapter...." 29 U.S.C. § 1132(e)(1). The FDCA, by contrast,

does not contain any express forum-pre-emption language. *See* 21 U.S.C. § 379r.

■ The lack of explicit forum-preempt-ing language is not controlling when there is other evidence that Congress intended to establish an exclusive federal forum; "the presumption of concurrent jurisdic-tion can be rebutted by an explicit statuto-ry directive, by unmistakable implication from legislative history, or by a clear in-compatibility between state-court jurisdic-tion and federal interests." *Tafflin v. Lev-itt*, 493 U.S. 455, 459–60, 110 S.Ct. 792, 107 L.Ed.2d 887 (1990); *see also Davis*, 476 U.S. at 388, 106 S.Ct. 1904 ("It is clearly within Congress' powers to establish an exclusive federal forum to adjudicate is-sues of federal law in a particular area that Congress has the authority to regulate under the Constitution. Whether it has done so in a specific case is the question that must be answered when a party claims that a state court's jurisdiction is pre-empted.") (citation omitted). For ex-ample, Congress demonstrated such intent in the National Labor Relations Act, where "Congress evidently considered that centralized administration of specially de-signed procedures was necessary to obtain uniform application of its substantive rules.... A multiplicity of tribunals and a diversity of procedures are quite as apt to produce incompatible or conflicting adjudi-cations as are different rules of substantive law." *Garmon*, 359 U.S. at 242–44, 79 S.Ct. 773 (citation omitted). In *Garmon*, the United States Supreme Court held that because Congress had enacted such a "complex and interrelated federal scheme of law, remedy, and administration" in the NLRA, "due regard for the federal enact-ment requires that state jurisdiction must yield." *Id.* at 243–44, 79 S.Ct. 773 (citation omitted).

■ In this case, we conclude that the FDCA contains no such "complex and in-terrelated federal scheme of law, remedy, and administration" that would divest the state courts of jurisdiction. *Id.* The stat-ute neither includes a private civil enforce-ment provision nor specifies a forum where claims may be heard. 21 U.S.C. § 379r. Nor is there indication in the legislative history of the FDCA that Con-gress intended it to divest state courts of jurisdiction to hear claims relating to non-prescription drugs, or that state-court ju-risdiction would be incompatible with fed-eral interests. The Act itself provides that "[n]othing in this section shall be con-strued to modify or otherwise affect any action or the liability of any person under the product liability law of any State." 21 U.S.C. § 379r(e). The Senate Committee Report for the bill enacting that provision similarly noted that "the legislation explic-itly provides that it shall not be construed to modify or otherwise affect the tradition-al product liability law of any State. Tort liability rules and requirements would re-main unchanged and unaffected." S.Rep. No. 105–43, at 66 (1997). Congress's deci-sion to exclude such a broad category of claims from the reach of the statute is inconsistent with an intent to vest "exclu-sive jurisdiction ... in another body." *Davis*, 476 U.S. at 388, 106 S.Ct. 1904.

We therefore conclude that the FDCA does not deprive state courts of subject matter jurisdiction to hear claims relating to such products. We do not decide whether the FDCA would, through ordi-nary preemption, provide a full defense to the plaintiffs' claims; in this interlocutory appeal, only the question of subject matter jurisdiction is currently before us.

Pursuant to Rule 59.1 of the Texas Rules of Appellate Procedure, we grant the class's Petition for Review, and, with-out oral argument, we reverse the court of appeals' judgment and remand the case to that court for consideration of the other

issues raised on appeal. *See* Tex.R.App. P. 59.1.