

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

---

No. 07-23-00341-CV

---

HEATHERLYNN HOLDA, APPELLANT

V.

CITY OF WACO, APPELLEE

---

On Appeal from the County Court at Law No. 3
McLennan County, Texas
Trial Court No. 20230933CV3, Honorable Ryan Luna, Presiding

---

December 27, 2023

## MEMORANDUM OPINION

Before QUINN, C.J., and DOSS and YARBROUGH, JJ.

Appellant, Heatherlynn Holda, appeals from the trial court's order divesting her of ownership of four dogs and one cat due to her cruel treatment of the animals.[1] Because the order forfeiting the animals is "final and may not be further appealed," we dismiss the appeal for want of jurisdiction. *See* TEX. HEALTH & SAFETY CODE ANN. § 821.025(e).

---

[1] Originally appealed to the Tenth Court of Appeals, this appeal was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001. In the event of any conflict, we apply the transferor court's case law. *See* TEX. R. APP. P. 41.3.

**BACKGROUND**

In August 2023, the City of Waco Municipal Court issued a warrant for the seizure of five animals from Holda's residence due to alleged cruel treatment.[2]  *See* TEX. HEALTH & SAFETY CODE ANN. §§ 821.021(a) (defining "cruelly treated" to mean, *inter alia*, "tortured, seriously overworked, unreasonably abandoned, unreasonably deprived of necessary food, care, or shelter, cruelly confined"), 821.022(b) (requiring a hearing within ten days of issuance of the warrant).  Following the seizure of the animals, the municipal court held a hearing to determine whether they had been cruelly treated.  Holda did not appear at

---

[2] An affidavit by Animal Control Officer, Christina Thane, requesting the issuance of the warrant alleged the following:

"The condition under which the animals were being kept is described as follows:

Animal Control has had a history with owner since 2021.  On August 2nd, 2023, Animal Control received a request from Waco Police Officer Joseph Hooten to respond to [the residence] regarding a case of animal cruelty they were wanting to pursue.  Upon arrival to the residence, I met with Officer Hooten outside the residence who warned me that the conditions of the residence were very poor, and the animals were also very bad conditions.  He stated he found several dogs and one cat inside the residence. [. . .]

Prior to entering the residence, myself, Officer Hooten, and Officer Nikki Coffman, went through the garage and they were telling me that all the dogs were in crates inside, but the cat was loose.  Prior to entering the residence through the garage, I could smell a strong odor of urine and feces coming through the cracked door.  Upon entering the residence, the smell of urine and feces became excessively strong.  I could see urine stains and feces on the floors in the main hallway, kitchen area, living room, all bedrooms that the dogs were housed in (upstairs as well), and even on the carpet on the stairs going upstairs.

In the hallway towards the downstairs bedroom there were two English bulldogs in a rather small crate.  The bottom of the crate was covered in dry feces and there was no water in the crate.  I could see stain marks on both dogs' feet from standing in their urine and feces.  When the crate was moved there was feces all over the floor underneath it as well.

In one of the downstairs bedrooms was a large pit mix that was cruelly confined in a wooden and wired crate.  I could also see stains of urine and feces on the dog's feet as well as physical feces in the crate.  There was no water inside the crate and the dog appeared underweight.

Upstairs in one of the rooms was a Rottweiler that was in a crate with minimal water that was tinted yellow, possibly from the dog urinating in the bowl.  The entire room was covered in feces and bowls with yellow looking water.  There was a cat hiding in the back corner of the room as well.  There were two empty crates in the room, but they were also covered in dried feces.  There was a self-cleaning litter box in the room that was full of feces and no litter was even present (because it was all clumped together from the urine or stuck to the feces)."

2

the hearing. Based on the evidence presented at the hearing, the municipal court determined that the animals had been cruelly treated and issued an order divesting Holda of ownership and transferring possession of the animals to the Humane Society of Central Texas. *See id.* § 821.023.

Holda appealed the municipal court order to the county court for de novo review. *See* TEX. HEALTH & SAFETY CODE ANN. § 821.025(a), (d) (requiring disposition of the appeal within ten days after the municipal court record is filed). After considering the matter, de novo, the county court issued an order affirming all findings of the municipal court.[3] Holda again did not appear at the hearing but later filed a "motion to set aside default judgment," asserting that her absence from the county court hearing was due to her military service. The county court denied the motion and Holda filed this appeal.

Our appellate jurisdiction extends "to all cases of which the District Courts or County Courts have original or appellate jurisdiction, under such restrictions and regulations as may be prescribed by law." TEX. CONST. ART. V, § 6; *see also* TEX. GOV'T CODE ANN. § 22.220. The Texas legislature has specifically excluded appeals from county court orders divesting ownership of cruelly treated animals from our jurisdiction. *See* TEX. HEALTH & SAFETY CODE ANN. § 821.025(e). Section 821.025(e) provides that "[t]he decision of the county court or county court at law under this section is final and may not be further appealed." *Id.* For this reason, appellate courts have dismissed such appeals for want of jurisdiction. *See Lang v. City of Garland Mun. Court,* No. 05-21-00522-CV, 2021 Tex. App. LEXIS 9931, at *1 (Tex. App.—Dallas Dec. 15, 2021, no pet.)

---

[3] Animal Control Officer, Christina Thane, testified at the de novo hearing and presented photographic evidence to the county court.

3

(mem. op.); *Smalley v. Four Brown & White Paint Horses*, No. 01-20-00103-CV, 2020 Tex. App. LEXIS 3543, at *1 (Tex. App.—Houston [1st Dist.] Apr. 28, 2020, no pet.) (per curiam) (mem. op); *Bounnharith v. State*, No. 09-15-00362-CV, 2015 Tex. App. LEXIS 10580, at *1 (Tex. App.—Beaumont Oct. 15, 2015, no pet.) (mem. op); *Aikman v. City of Stephenville*, No. 11-10-00230-CV, 2012 Tex. App. LEXIS 7166, at *4 (Tex. App.—Eastland Aug. 23, 2012, no pet.) (mem. op); *Gracia v. State*, Nos. 14-11-00241-CV, 14-11-00617-CV, 2012 Tex. App. LEXIS 5806, at *12 (Tex. App.—Houston [14th Dist.] July 19, 2012, no pet.) (per curiam) (mem. op); *Hoffman v. Marion Cty.*, No. 06-10-00048-CV, 2010 Tex. App. LEXIS 4852, at *2 (Tex. App.—Texarkana June 25, 2010, no pet.) (mem. op.).

Accordingly, we directed the parties to show how we have jurisdiction over this appeal. In response, Holda claims that the federal Servicemembers' Civil Relief Act (SCRA), which protects servicemembers against default judgments, conflicts with Section 821.025(e)'s restriction from further appellate review, as it "interferes with or restricts remedies under a federal statute." According to Holda, Section 821.025(e) is, therefore, preempted by SCRA under the doctrine of "conflict preemption."

**ANALYSIS**

The Supremacy Clause of the United States Constitution, for which federal preemption of state law is grounded, provides that "the Laws of the United States . . . shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." *See* U.S. Const. art. VI, cl. 2; *MCI Sales & Serv., Inc. v. Hinton*, 329 S.W.3d 475, 481 (Tex.

2010). Accordingly, if a state law conflicts with federal law, it is preempted and has no effect. *Maryland v. Louisiana*, 451 U.S. 725, 746 (1981). There are three ways that a state law may conflict with federal law and thus be preempted: (1) federal law may expressly preempt state law, (2) federal law may impliedly preempt state law if the federal statute's scope indicates that Congress intended federal law to occupy the field exclusively; and (3) federal law may impliedly preempt state law if it is in actual conflict with federal law. *Mills v. Warner Lambert Co.*, 157 S.W.3d 424, 426 (Tex. 2005) (*citing Great Dane Trailers, Inc. v. Estate of Wells*, 52 S.W.3d 737, 743 (Tex. 2001)). State law "actually conflicts" with federal law "where it is impossible for a private party to comply with both state and federal requirements" or "where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Freightliner Corp. v. Myrick*, 514 U.S. 280, 287 (1995).

Here, Holda claims that the third category of federal preemption applies, that state law "actually conflicts" with federal law. We first examine the SCRA, which applies to any civil proceedings in state courts "in which the defendant does not make an appearance." *See* 50 U.S.C. §§ 3912, 3931(a). Section 3931(g) of the SCRA grants the trial court authority to vacate or set aside a default judgment under the following conditions:

> (1) Authority for court to vacate or set aside judgment. If a default judgment is entered in an action covered by this section against a servicemember during the servicemember's period of military service (or within 60 days after termination of or release from such military service), the court entering the judgment shall, upon application by or on behalf of the servicemember, reopen the judgment for the purpose of allowing the servicemember to defend the action if it appears that —
>
> (A) the servicemember was materially affected by reason of that military service in making a defense to the action; and

5

(B) the servicemember has a meritorious or legal defense to the action or some part of it.

(2) Time for filing application. An application under this subsection must be filed not later than 90 days after the date of the termination of or release from military service. *See* 50 U.S.C. § 3931(g).

Holda claims that a conflict exists because "[i]t is impossible for the judgment to be both reopened [pursuant Section 3931(g)] and to remain final [under Section 821.025(e)]." Assuming, arguendo, that Holda has complied with the requirements of the SCRA and that the SCRA applies to the underlying proceedings, Holda has not demonstrated a conflict between the remedy provided by Section 3931(g) and her remedies still available under Section 821.025(e). Under Section 3931(g), Holda may file an application with the trial court to reopen the judgment and assert a defense to the action. This is consistent with her remedies available via a petition for bill of review under state law.

Under Texas law, a bill of review is an equitable proceeding brought by a party seeking to set aside a prior judgment that is no longer subject to challenge by a motion for new trial or appeal. *Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 504 (Tex. 2010). A bill of review is a direct attack on a judgment that must be brought in the court that rendered the original judgment within four years after the judgment is signed. *See id.; Caldwell v. Barnes*, 154 S.W.3d 93, 96 (Tex. 2004) (per curiam). A party seeking relief in a bill of review proceeding must plead and prove three elements: (1) a meritorious defense to the underlying cause of action, (2) which the party was unable to present by virtue of fraud, accident or wrongful act of the opposing party or official mistake, (3) unmixed with any negligence of her own. *Caldwell*, 154 S.W.3d at 96.

6

Because a petition for bill of review offers a party the same remedies available under Section 3931(g), Holda has not demonstrated that an actual conflict exists between state and federal law. Through a bill of review or Section 3931(g), a party may petition the trial court to reopen a default judgment to defend the underlying action. Under both avenues, the party must show that the failure to appear was not the result of the party's own negligence and must present a meritorious legal defense. Accordingly, it is not impossible for Holda to seek the remedies available under Section 3931(g) via a petition for bill of review, despite her inability to appeal the county court's order pursuant to Section 821.025(e). Or, put in other terms, Section 821.025(e) does not "stand as an obstacle to the accomplishment and execution of" Section 3931(g).

## CONCLUSION

Because we find no conflict exists between Section 3931(g) of the Servicemembers Civil Relief Act and Section 821.025(e) of the Health and Safety Code, we hold that Section 821.025(e) is not federally preempted. And, as Section 821.025(e) prohibits appeal of the county court order presented by Holda for review, we dismiss the appeal for want of jurisdiction. *See* TEX. R. APP. P. 42.3(a).

Lawrence M. Doss
Justice

7