IN THE SUPREME COURT OF TEXAS








IN THE SUPREME COURT OF TEXAS
 
════════════
No. 05-0303
════════════
 
Thomas Graber and Hopkins 
& Sutter, Petitioners,
 
v.
 
Richard L. Fuqua, 
Respondent
 
════════════════════════════════════════════════════
On Petition for Review from the
Court of Appeals for the Thirteenth District of 
Texas
════════════════════════════════════════════════════
 
 
Argued January 26, 
2006
 
 
            
Justice Wainwright, joined 
by Justice Brister, Justice Medina, and Justice Willett dissenting.
 
 
            
The question posed is whether federal or state law should provide the 
remedy to a debtor allegedly sued wrongfully in an adversary proceeding in 
bankruptcy court. The predicate conduct for the adversary proceeding occurred 
prior to the debtor’s filing of the bankruptcy petition, and all of the alleged 
wrongful conduct occurred in the bankruptcy proceeding. The Court holds that on 
these facts the debtor may pursue a Texas common law malicious prosecution claim 
in state court for harm allegedly caused during federal bankruptcy proceedings. 
Because federal law occupies the field of bankruptcy, and Congress created an 
analogue in the Bankruptcy Code to malicious prosecution of an involuntary 
Chapter 11 bankruptcy, but not for the voluntary Chapter 7 bankruptcy at issue 
here, I would not create a new claim for abuses in Chapter 7 bankruptcies that 
Congress saw fit not to create. Debtors have adequate recourse for abuse of the 
bankruptcy process in the Bankruptcy Code and Rules.
            
I am also concerned that the Court’s holding undermines the uniformity 
mandated for bankruptcy law by the United States Constitution, as under the 
Court’s rationale all fifty states could overlay their state remedies on the 
bankruptcy proceedings and multiply the controversy for years beyond the 
controlled confines of the federal bankruptcy process. I therefore respectfully 
dissent.
I. Background
            
In 1988, Richard L. Fuqua, an attorney, filed a voluntary bankruptcy 
petition under Chapter 7 in the Bankruptcy Court for the Southern District of 
Texas, McAllen Division. A year later, Thomas Graber and the law firm in which 
he is a partner, Hopkins & Sutter (referred to collectively as Graber), 
filed an adversary action in the bankruptcy proceeding on behalf of Sunbelt 
Savings (Sunbelt) alleging that Fuqua conspired with a client, Richard Aubin, 
and others to defraud Sunbelt in a pre-petition real estate transaction. Fuqua 
alleges that during discovery in the adversary proceeding, Graber provided false 
and intentionally misleading information about him and caused a criminal 
referral to be made to the United States Department of Justice regarding Fuqua’s 
involvement in the real estate transaction. 
            
The Department of Justice intervened in the adversary proceeding, and the 
bankruptcy judge stayed the proceeding during the criminal investigation. The 
investigation resulted in the indictment of Fuqua and Aubin for bank and tax 
fraud in 1992. In 1993, the bankruptcy court discharged Fuqua’s debts, but the 
adversary proceeding remained pending in the bankruptcy court. After a 1994 
trial in the U.S. District Court for the Northern District of Texas, Fuqua was 
acquitted of criminal wrongdoing. The civil adversary proceeding resumed upon 
resolution of the criminal trial. After a three-day trial in 1996, the 
bankruptcy court granted a directed verdict in favor of Fuqua. The bankruptcy 
court entered judgment against Sunbelt on May 
13, 1997. The U.S. District Court of the Southern District of Texas dismissed 
Sunbelt’s appeal of the bankruptcy judgment on 
September 8, 1998, and there was no appeal of that dismissal.
            
On September 7, 2000, Fuqua filed this state malicious prosecution action 
in the 93rd District Court of Hidalgo 
County, Texas. Fuqua 
alleged that Graber “knowingly, maliciously, and wantonly acted without probable 
cause in initiating or procuring the civil adversary proceeding, as well as the 
criminal proceeding, against Fuqua.” The district court granted Graber’s motion 
for partial summary judgment dismissing the criminal malicious prosecution claim 
based on the statute of limitations. In his third amended answer, Graber filed a 
plea to the jurisdiction, arguing that the district court lacked subject matter 
jurisdiction to hear Fuqua’s civil malicious prosecution claim because the claim 
was preempted by federal bankruptcy law. The district court granted Graber’s 
plea to the jurisdiction and dismissed the suit on November 25, 2002. Fuqua 
appealed.
            
The court of appeals held that Fuqua’s malicious prosecution claim did 
not interfere with the bankruptcy court’s jurisdiction, and therefore, the state 
court maintained concurrent jurisdiction unless it was preempted by the 
Bankruptcy Code. 158 S.W.3d 635, 646. On the latter point, the court of appeals 
determined that there was no express preemption language in the Bankruptcy Code 
and that state jurisdiction was not preempted by federal bankruptcy law. 
Id. 
Accordingly, the court of appeals reversed and remanded the case for trial. 
Id. at 
647.
II. Parties’ Arguments 
            
Graber argues the court of appeals erred in holding that Fuqua’s 
malicious prosecution claim was not preempted, complaining that even the court 
of appeals itself twice recognized that “a majority of courts that have 
considered the preemptive nature of bankruptcy law in the context of state tort 
claims alleging violations of the bankruptcy process have found such claims to 
be preempted.” Id. at 641, 643-44. According to 
Graber, federal law preempts Fuqua’s claim because section 105 of the Bankruptcy 
Code and rule 9011 of the Federal Rules of Bankruptcy Procedure provide the only 
remedies for abuse of the bankruptcy process. Allowing such claims in state 
court, Graber adds, would undermine the uniformity, free access, and finality 
Congress intended in the bankruptcy process. 
            
Fuqua counters that Congress did not intend federal bankruptcy law to 
preempt his state malicious prosecution claim.[1] He points to a state court’s concurrent 
jurisdiction over claims that do not affect distribution of the debtor’s assets. 
He adds that section 105 and rule 9011 cannot occupy the field of malicious 
prosecution because they only provide sanctions, not damages, for abuse 
of the bankruptcy process. Fuqua further argues that under Graber’s reasoning, 
Fuqua is without a remedy for his damages because a malicious prosecution cause 
of action does not accrue until the appeals process for the underlying suit has 
been exhausted. Fuqua admits that he did not seek sanctions or any other remedy 
in the bankruptcy court for the alleged abuse of process, but maintains he could 
not have pursued a claim against petitioners in bankruptcy court because 
Sunbelt’s appeal of the adversary proceeding was not dismissed until September 
8, 1998, ten years after he filed his bankruptcy petition and five years after 
his debts were discharged. The record, however, contains no indication that the 
bankruptcy court issued a final order, and no evidence was presented that the 
clerk closed the bankruptcy proceeding.
III. Federal Preemption of State Law
            
Federal preemption of state law is grounded in the Supremacy Clause of 
the United States Constitution: “the Laws of the United States . 
. . shall be the supreme Law of the Land; and the Judges in every State shall be 
bound thereby, any Thing in the Constitution or Laws of any State to the 
Contrary notwithstanding.” U.S. Const. art. VI, cl. 2. Under the 
Supremacy Clause, if state law conflicts with federal law, the state law is 
preempted and “without effect.” Maryland v. Louisiana, 451 U.S. 725, 746 
(1981). The parties do not argue that federal law preempts state law expressly 
in this case. 158 S.W.3d at 639. See Great Dane Trailers, Inc. v. Estate of 
Wells, 52 S.W.3d 737, 743 (Tex. 2001). Graber asserts that federal 
bankruptcy law impliedly preempts state law, either (1) because the scheme of 
federal regulation is sufficiently comprehensive to support a reasonable 
inference that Congress left no room for supplementary state regulation (field 
preemption), or (2) because the state law actually conflicts with federal 
remedies (conflict preemption). See id. 
            
“The purpose of Congress is the ultimate touchstone” in every preemption 
case. Retail Clerks Int'l Ass'n v. Schermerhorn, 375 U.S. 96, 103 
(1963). Accordingly, to discern whether Congress manifested a clear intent to 
preempt state claims arising from abuse of the bankruptcy process, we consider 
the statute’s language and structure, the context of its enactment, and the 
purpose of the statute as a whole as revealed through our “reasoned 
understanding of the way in which Congress intended the statute and its 
surrounding regulatory scheme to affect business, consumers, and the law.” 
Worthy v. Collagen Corp., 967 S.W.2d 360, 367 (Tex. 1998) (quoting 
Medtronic, Inc. v. Lohr, 518 U.S. 470, 485-86 (1996)).
IV. Federal Law 
Occupies the Field of Bankruptcy 
and Preempts State 
Law.
 
            
The U.S. Constitution gives Congress alone the power “[t]o establish . . 
. uniform Laws on the subject of Bankruptcies throughout the United States.” 
U.S. Const. art. I, § 8, cl. 4. 
Congress passed the Bankruptcy Act of 1898 to govern bankruptcies, then 
overhauled and codified those statutes in 1978, and has since superceded much of 
the Bankruptcy Code of 1978 in the 1984 and 1986 amendments to the Code. 
Manuel D. Leal, The Power of the Bankruptcy Court: Section 105, 29 S. 
Tex. L. Rev. 487, 492 (1988). Congress granted jurisdiction over bankruptcy 
matters to the federal courts by sections 157 and 1334 of title 28 of the United 
States Code. Celotex Corp. v. Edwards, 514 U.S. 300, 307 (1995). This 
jurisdiction is exercised in the first instance by bankruptcy courts, which are 
divisions of federal district courts. See Cox v. Zale Del., Inc., 
239 F.3d 910, 917 (7th Cir. 2001).            

            
Filing a bankruptcy petition vests broad and exclusive jurisdiction over 
the property of the debtor and his estate in the district court, and hence the 
bankruptcy court. In re Garnett, 303 B.R. 274, 277 (E.D.N.Y. 2003). 
Section 541(a)(1) defines the property of the estate to include “all legal or 
equitable interests of the debtor in property as of the commencement of the 
case.” 11 U.S.C. § 541(a)(1). “This definition is unquestionably broad, its main 
purpose being to ‘bring anything of value that the debtors have into the 
[bankruptcy] estate.’” Lyon v. Eiseman (In re Forbes), 372 B.R. 321, 
330-31 (B.A.P. 6th Cir. 2007) (alteration in original) (citing Booth 
v. Vaughan (In re Booth), 260 B.R. 281, 284-85 (B.A.P. 6th Cir. 
2001)). These broad powers extend to both a debtor’s estate and 
all transfers made within two years before the filing of the bankruptcy 
petition. See 11 U.S.C. §§ 541, 548(a)(1). All legal proceedings against 
the debtor or his estate are automatically stayed and subjugated to the 
bankruptcy proceeding. 11 U.S.C. § 362. The disposition of the debtor’s property 
is governed by federal law, although a debtor’s property interests are generally 
“created and defined by state law” unless a federal purpose requires otherwise. 
Lyon, 372 B.R. at 331 (citing Butner v. United States, 440 U.S. 
48, 55 (1979)). 
            
In the absence of explicit preemptive language, Congress’s intent to 
supersede state law fully may be inferred when the scheme of federal regulation 
is “so pervasive as to make reasonable the inference that Congress left no room 
for the States to supplement it,” when the Act of Congress “touch[es] a field in 
which the federal interest is so dominant that the federal system will be 
assumed to preclude enforcement of state laws on the same subject,” or when “the 
object sought to be obtained by federal law and the character of the obligations 
imposed by it may reveal the same purpose.” Fidelity Fed. Sav. & Loan 
Ass’n v. de la Cuesta, 458 U.S. 141, 152-53 (1982) (citations omitted). This 
form of preemption is a federal defense to state law claims and implicates 
choice of law rather than choice of forum.[2] See Int’l 
Longshoremen’s Ass’n v. Davis, 476 U.S. 380, 391 (1986). Graber 
argues federal bankruptcy law impliedly preempts Fuqua’s claims because the 
state law purports to regulate conduct “in a field that Congress intended the 
Federal Government to occupy exclusively,” English v. Gen. Elec. Co., 496 
U.S. 72, 79 (1990), and because the state law “stands as an obstacle to the 
accomplishment and execution of the full purposes and objectives of Congress,” 
Hines v. Davidowitz, 312 U.S. 52, 67 (1941).[3] The federal interest in and control of 
bankruptcy may truly be said to have completely “occupied the field.”[4] 
A. Congress 
Authorized the Award of Actual and Punitive Damages, 
Attorneys’ Fees, 
and Costs to Parties, as Appropriate, 
for Violation of 
Bankruptcy Statutes and Rules and Malicious Prosecution in Bankruptcy 
Proceedings.
 
            
Fuqua concedes that an action based on a frivolous or groundless claim 
could be preempted by the Bankruptcy Code and Rules, but he contends the 
remedial scheme of the Bankruptcy Code and Rules is inapposite to the purpose 
and remedies of a malicious prosecution claim. Graber argues Congress intended 
to supercede state law in this field by designing adequate remedies in section 
105 and rule 9011 to deter abuse of the bankruptcy process. Fuqua also concedes 
that section 105 grants the bankruptcy court broad equitable powers, but urges 
that the section does not sufficiently address malicious prosecution. According 
to Fuqua, rule 9011 only addresses frivolous or groundless claims and mirrors 
Federal Rule of Civil Procedure 11, which has been held not to preempt state law 
actions for malicious prosecutions in federal court. See U.S. Express Lines, 
Ltd. v. Higgins, 281 F.3d 383, 392-93 (3d Cir. 2002).
            
The authority bestowed on bankruptcy courts by federal law arms them with 
a broad array of remedies to regulate the conduct of parties, issue injunctive 
relief, and award sanctions and damages for maliciously initiating proceedings. 
The Bankruptcy Code “provides a comprehensive federal system of penalties and 
protections to govern the orderly conduct of debtors’ affairs and creditors’ 
rights.” E. Equip. & Servs. Corp. v. Factory Point Nat’l Bank, 236 
F.3d 117, 120 (2d Cir. 2001). Other courts have concluded that this 
comprehensive system overrides state law claims for this type of abuse of the 
bankruptcy process. 
            
“A debtor who believes a filing in bankruptcy is frivolous or a violation 
of the automatic stay occurred has a comprehensive scheme of remedies available 
in the federal courts. The existence of this comprehensive scheme precludes 
collateral attacks on such filings in state courts.” Glannon v. Garrett & 
Assocs., Inc., 261 B.R. 259, 264 (D. Kan. 2001) (quoted in Greene 
v. Young, 174 S.W.3d 291, 302 n.7 (Tex. App–Houston [1st Dist.] 2005, pet. 
denied)). Sections 105(a) and 362(k) and rule 9011 provide effective remedies 
under federal law and authority for bankruptcy courts to enjoin violations of 
law and to award damages to debtors harmed by bad faith and abusive conduct in 
bankruptcy proceedings. 11 U.S.C. §§ 105(a), 362(k); Fed. R. Bankr. P. 9011(b)-(c). 
            
Section 105(a) empowers bankruptcy courts.
 
The 
court may issue any order, process, or judgment that is necessary or appropriate 
to carry out the provisions of this title. No provision of this title 
providing for the raising of an issue by a party in interest shall be construed 
to preclude the court from, sua sponte, taking any action or making any 
determination necessary or appropriate to enforce or implement court orders or 
rules, or to prevent an abuse of process. 
 
11 U.S.C. § 
105(a) (emphasis added). Section 105 gave the bankruptcy courts “broad equitable 
powers to exercise [their] jurisdiction any time there is a threat to the 
successful rehabilitation of the estate.” Manuel D. Leal, The Power of the 
Bankruptcy Court: Section 105, 29 S. 
Tex. L. Rev. 487, 497 (1988) (citing In re Stuart Glass & Mirror, 
Inc., 71 B.R. 332, 335 (Bankr. S.D. Fla. 1987)). The last phrase–“to prevent 
an abuse of process”–was added in 1986 to affirm that bankruptcy courts may take 
any action on their own and make any necessary determination to prevent an abuse 
of process and expedite bankruptcy cases. Id. at n.219 (citing Senator 
Orrin Hatch who apparently made the only statement in legislative history 
concerning the amendment). Under section 105(a), the court may raise the issue 
of good faith in considering motions of the parties. Little Creek Dev. Co. v. 
Commonwealth Mortg. Corp. (In re Little Creek Dev. Co.), 779 F.2d 1068, 1071 
n.1 (5th Cir. 1986). 
            
Under section 362(k), any individual injured by a willful violation of a 
stay “shall recover actual damages, including costs and attorneys’ fees, and in 
appropriate circumstances, may recover punitive damages.” 11 U.S.C. § 362(k) 
(stating further that a good faith belief limits recovery to actual damages). 
Although this case does not concern violation of a bankruptcy stay, this section 
clearly shows that Congress considered the award of actual and punitive damages, 
in addition to fees and costs, and authorized ordering those awards as 
appropriate.
            
Rule 9011, analogous to Fed. R. Civ. P. 11, empowers bankruptcy courts to 
impose “an appropriate sanction upon the attorneys, law firms, or parties” that 
have presented to the court pleadings, motions, or “other paper” containing 
allegations, factual contentions, or claims and defenses that generally have no 
evidentiary support and are not warranted by existing law.[5] Rule 9011 authorizes the award of 
reasonable expenses and attorneys’ fees, monetary sanctions, or a penalty to the 
court. Fed. R. Bankr. P. 9011(c). 

            
Fuqua asserts that “any sanctions ordered may be payable solely to 
the court and not the party subjected to the frivolous or groundless claim” 
(emphasis added). He argues this as another reason bankruptcy statutes and rules 
need to be supplemented by state law to provide recourse to debtors for harm 
caused them in bankruptcy adversary proceedings. This is incorrect, as the rule 
authorizes awards of sanctions and damages to parties in the proceeding. Rule 
9011(c) expressly states that the court “may award to the party prevailing 
on the motion” reasonable expenses and attorneys’ fees. Fed. R. Bankr. P. 9011(c)(1)(A) 
(emphasis added). It also authorizes orders “directing payment to the movant 
of some or all of the reasonable attorneys’ fees and other expenses incurred 
as a direct result of the violation.” Id. (c)(2) (emphasis added). 
            
Fuqua’s assertion that section 105 does not provide recovery of damages 
for maliciously bringing proceedings in bankruptcy is likewise off the mark. A 
number of courts have affirmed that section 105, although widely used for 
injunctive relief, authorizes the award of “any type of order, whether 
injunctive, compensative or punitive, as long as it is ‘necessary or appropriate 
to carry out the provisions’” of the Bankruptcy Code. Hardy v. U.S. (In re 
Hardy), 97 F.3d 1384, 1389 (11th Cir. 1996) (citing 11 U.S.C. § 105(a)). 
See also McTyeire v. Hunt (In re McTyeire), 357 B.R. 898, 903 (Bankr. 
M.D. Ga. 2006). Section 105 authorizes a bankruptcy court to order payment of 
actual and puntive damages as well as attorneys’ fees and costs. Manion v. 
Providian Nat’l Bank, 269 B.R. 232, 241-42 (D. Colo. 2001) (affirming the 
bankruptcy court’s order requiring a holder of void deeds of trust to pay actual 
damages and attorneys’ fees in an adversary proceeding); Moratzka v. Visa 
U.S.A. (In re Calstar, Inc.), 159 B.R. 247, 261 (Bankr. D. Minn. 1993) 
(awarding money damages for a violation of the automatic stay and stating that 
punitive damages, although generally available under section 105, were not 
warranted in the case). Leal, 29 S. Tex. 
L. Rev. at 496.
            
Section 303(i) also provides a close analogue to a Texas common law 
malicious prosecution claim, authorizing awards to debtors for reasonable 
attorneys’ fees, costs, and actual or punitive damages when the court dismisses 
an involuntary petition. 11 U.S.C. § 303(i). Although section 303(i) only 
applies to involuntary cases, it once again affirms that Congress recognized the 
wide panoply of available remedies for abuse of process and then associated 
sanctions and awards with selected violations of the Code and the Rules. 
Congress provided sanctions for certain violations of Bankruptcy Code 
provisions, injunctive relief for some, actual damages for others, and punitive 
damages for a few. The provisions implicated by a debtor’s claim of malicious 
prosecution, section 105 and rule 9011, both provide sanctions and damages upon 
proper proof. 
            
Because Congress has provided a comparable, if not exact, counterpart in 
federal bankruptcy law to Fuqua’s sought-after remedies, his argument that 
recoveries in bankruptcy law are woefully inadequate loses considerable steam. 
The existence of the remedial provisions cited “suggests that Congress has 
considered the need to deter misuse of the process and has not merely overlooked 
the creation of additional deterrents.” MSR Exploration, 74 F.3d at 915 
(citing Mertens v. Hewitt Assocs., 508 U.S. 248, 252-54 (1993) 
(enforcement scheme in ERISA indicates Congress did not forget other remedies) 
and Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 54 (1987) (ERISA 
remedies preempt others, even if some possible remedies are left out)). If a 
Texas common law claim packs more wallop than the bankruptcy relief, then 
Congress presumably intended to provide a more limited remedy for the malicious 
filing of an adversary proceeding in a voluntary bankruptcy. The fundamental 
vacancy in Fuqua’s argument is the unsubstantiated presumption that bankruptcy 
laws necessarily must provide equivalent levels of recovery to the state common 
law claim. 
            
Fuqua contends that, were we to hold his state malicious prosecution 
claim preempted, he would have no remedy because the bankruptcy court has 
discharged his debts and no longer has jurisdiction over his case. Section 
350(a) states that after the estate is fully administered and the court has 
discharged the trustee, “the court shall close the case.” Further, according to 
the bankruptcy rules, a court “shall enter a final decree closing the 
case.” Fed. R. Bankr. P. 3022 
(emphasis added).
            
Neither a discharge of debts nor a dismissal closes the case; on the 
contrary, a bankruptcy case is not closed, and the bankruptcy court retains 
jurisdiction, until the final decree is entered on the docket sheet. See In 
re Union Home and Indus., Inc., 375 B.R. 912, 917 (B.A.P. 10th Cir. 2007); 
Sherman v. Sec. & Exch. Comm’n (In re Sherman), 491 F.3d 948, 967 
(9th Cir. 2007); Greenfield Drive Storage Park v. Cal. Para-Prof’l Servs., 
Inc. (In re Greenfield Drive Storage Park), 207 B.R. 913, 918 (B.A.P. 9th 
Cir. 1997); Singleton v. Countrywide Home Loans, Inc. (In re Singleton), 
358 B.R. 253, 256 (D.S.C. 2006) (holding that dismissal of a bankruptcy case 
does not deprive the court of jurisdiction; it must be closed); In re 
Hasan, 287 B.R. 308, 311 (Bankr. D. Conn. 2002) (holding that a debtor’s 
voluntary dismissal did not close the case and that the bankruptcy court 
retained jurisdiction to impose sanctions on the debtor); In re A.H. Robins 
Co., 219 B.R. 145, 149 (Bankr. E.D. Va. 1998). See also 9 Collier on Bankr. § 5009.01 (15th ed. 2006). Once the 
bankruptcy case is closed, there is no longer a bankruptcy estate, and there can 
no longer be “related to” jurisdiction. 9 Collier on Bankr. § 5009.01. As such, the bankruptcy court 
only then loses jurisdiction.
            
Graber states that there is no order in the record closing Fuqua’s 
Chapter 7 case. Fuqua does not assert that a final order was issued and has 
presented no evidence that his bankruptcy case was ever closed. See 
A.M.S. Printing Corp. v. Wernick (In re Wernick), 242 B.R. 194, 196 
(Bankr. S.D. Fla. 1999); Edwards v. Sieger (In re Sieger), 200 B.R. 636, 
639 (Bankr. N.D. Ind. 1996). If his case remains open, the bankruptcy court 
retains jurisdiction, and Fuqua could petition that court for appropriate 
remedies. Moreover, if the bankruptcy case has in fact been closed, Fuqua could 
petition the court to reopen it “to accord relief to the debtor.” 11 U.S.C. § 
350(b). Fuqua has not persuaded me that he would have no relief in 
bankruptcy.
            
Ultimately, Congress, not the state courts, should decide what incentives 
and penalties are appropriate to address litigation conduct in the bankruptcy 
proceedings and when those incentives or penalties should be used. See 
Gonzales v. Parks, 830 F.2d 1033, 1036-37 (9th Cir. 1987).
B. The Court’s 
Recognition of a State Common Law Malicious Prosecution Claim 
for Adversary 
Proceedings Conflicts with Congress’s Decision 
Not to Create Such a Claim for Voluntary Chapter 7 
Bankruptcies.
            
“[B]ankruptcy principles come from federal rather than state law.” 
Randolph v. IMBS, Inc., 368 F.3d 726, 730 (7th Cir. 2004) (Easterbrook, 
J.) (citing Cox v. Zale Del., Inc., 239 F.3d 910, 916 (7th Cir. 2001) 
(Posner, J.). In bankruptcy, “the debtor’s protection and remedy remain[] under 
the Bankruptcy Act.” Kokoszka v. Belford, 417 U.S. 642, 651 (1974) 
(holding superceded in part by statute). The “delicate balance of a debtor’s 
protections and obligations during the bankruptcy procedure” have been fixed, 
modified, overhauled, and set by Congress over more than a century, eminating 
from explicit constitutional authority to make the bankruptcy laws. 
Kokoszka, 417 U.S. at 651.
            
 Congress provided a roadmap to its intent in the relevant 
provisions of the Bankruptcy Code. It includes both voluntary and involuntary 
bankruptcies under Chapters 7 and 11. See 11 U.S.C. §§ 301, 303. In 
section 303, Congress promulgated a statutory analogue to state law malicious 
prosecution claims for abuse of bankruptcy proceedings in involuntary cases. 
Id. Section 303(i) provides for recovery of “any damages proximately 
caused,” including actual and exemplary damages, by filing an involuntary 
petition in bad faith. Id. By its language, section 303(i) remedies 
include the damages that may be recovered under Texas common law for malicious 
prosecution. See, e.g., Fifth Club, Inc. v. Ramirez, 196 
S.W.3d 788, 798 (Tex. 2006) (allowing mental anguish damages); Ellis County 
State Bank v. Keever, 915 S.W.2d 478, 479 (Tex. 1995) (discussing 
sufficiency of the evidence for punitive damages). Courts have consistently held 
that section 303(i) preempts state law actions for malicious prosecution in 
involuntary bankruptcy proceedings.[6] 
            
Importantly, for this case and Fuqua’s claim, Congress did not similarly 
create a vehicle for recovery of “all damages proximately caused” or exemplary 
damages for voluntary Chapter 7 proceedings. Instead, Congress created remedies 
to recover attorneys’ fees and costs as sanctions. The extensive remedial 
provisions for involuntary petitions indicate that Congress did not ignore but 
considered sanctions, equitable remedies, and compensatory and exemplary damages 
in the bankruptcy scheme. MSR Exploration, 74 F.3d at 913. Where Congress 
includes damages provisions in one section of a statute but omits them in 
another section of the same statute, we presume Congress acted intentionally and 
purposefully in the disparate inclusion or exclusion. Clay v. U.S., 537 
U.S. 522, 528 (2003); Duncan v. Walker, 533 U.S. 167, 173 (2001). In this 
context, Congress’s creation of sanctioning tools, albeit broad, rather than 
damages, speaks loudly to Congress’s intent for conduct constituting malicious 
prosecution in voluntary Chapter 7 proceedings. By allowing Fuqua’s Texas common 
law prosecution claim to proceed for actions that occurred entirely in 
bankruptcy, the Court, in effect, creates a malicious prosecution claim for 
voluntary Chapter 7 bankruptcies that Congress saw fit not to create.
            
There is no provision comparable to a Texas malicious prosecution claim 
directed specifically at the voluntary filings of a debtor or an adversary 
proceeding instituted by a creditor. There are, however, many other remedial 
provisions in the Code that could apply. See, e.g., 11 U.S.C. § 362(k) 
(willful violation of automatic stays); 11 U.S.C. § 707(b) (dismissal for 
“substantial abuse”); 11 U.S.C. § 930(a) (dismissal under Chapter 9); 11 U.S.C. 
§ 1112(b) (dismissal under Chapter 11); 28 U.S.C. § 1927 (liability for 
excessive costs for “unreasonably and vexatiously” multiplying proceedings). And 
like 303(i), section 362(k) has been held to preempt state law abuse of process 
claims for violations of an automatic stay. See E. Equip. & Servs. Corp. 
v. Factory Point Nat’l Bank, 236 F.3d 117, 120 (2d Cir. 2001) (preemption of 
jurisdiction); Periera v. Chapman, 92 B.R. 903, 908 (C.D. Cal. 1988); 
Brandt v. Swisstronics, Inc. (In re Shape), 135 B.R. 707, 708-09 (Bankr. 
D. Me. 1992); Koffman, 182 B.R. at 123-28 (preemption holding based on 
both section 303(i) and section 362(k)); Smith v. Mitchell Constr. Co., 
481 S.E.2d 558, 561 (Ga. Ct. App. 1997). See also Halas v. Platek, 239 
B.R. 784, 792 (N.D. Ill. 1999) (holding that because a claim for sanctions under 
section 362(k) is within the exclusive jurisdiction of federal courts, state 
court lacked subject matter jurisdiction over claim). 
            
The existence of such an extensive remedial scheme indicates 
congressional intent for bankruptcy law to “occupy exclusively” the regulation 
of conduct amounting to malicious prosecution or abusive filings in the 
bankruptcy process. English v. Gen. Elec. Co., 496 U.S. 72, 79 (1990). An 
overlay of fifty states’ common law claims would damage or interfere with the 
federal scheme. In addition to the Bankruptcy Code’s extensive remedial scheme 
indicating congressional intent, the constitutionally prescribed need for 
uniformity in the bankruptcy laws is a special feature that warrants preemption. 
Id.
C. The Required 
Uniformity of Bankruptcy Laws Mitigates Against Development of 
State Common Law 
Claims for Misconduct in Bankruptcy Proceedings.
 
            
The Constitution grants Congress the authority to establish “uniform 
Laws” on the subject of bankruptcies. U.S. Const. art. I, § 8. Utilizing this 
power, Congress created comprehensive regulations on the subject of bankruptcy 
and vested original and exclusive jurisdiction over bankruptcy petitions in the 
federal district courts. 28 U.S.C. § 1334(a). Allowing state court actions for 
abuse of the bankruptcy process conflicts with this goal of uniformity. “[T]he 
unique, historical, and even constitutional need for uniformity in the 
administration of the bankruptcy laws is another indication that Congress wished 
to leave the regulation of parties before the bankruptcy court in the hands of 
the federal courts alone.” See MSR Exploration, 74 F.3d at 
915.
            
There are several reasons to preclude these types of state common law 
claims to ensure the uniformity of bankruptcy law. First, Congress’s 
authorization of certain penalties for frivolous filings in its pervasive 
promulgation of bankruptcy laws “should be read as an implicit rejection of 
other penalties, including the kind of substantial damage awards that might be 
available in state court tort suits.” Gonzales, 830 F.2d at 1036. Second, 
the ability to sue parties in bankruptcy in civil proceedings under state law 
that is inconsistent with the Bankruptcy Code would threaten the uniformity of 
federal bankruptcy law by potentially affecting parties’ rights before the 
bankruptcy court. See Gonzales, 830 F.2d at 1035 (discussing a claim 
against debtor for maliciously filing a voluntary petition). Third, the threat 
of being sued in tort in state court could deter persons from exercising their 
rights in bankruptcy, for instance by making them reluctant to file an adversary 
proceeding. See id. at 1036; MSR Exploration, 74 F.3d at 916. 
            
“While it is true that bankruptcy law makes reference to state law at 
many points, the adjustment of rights and duties within the bankruptcy process 
itself is uniquely and exclusively federal.” MSR Exploration, 74 F.3d at 
916. Moreover,
 
            
It is very unlikely that Congress intended to permit the superimposition 
of state remedies on the many activities that might be undertaken in the 
management of the bankruptcy process . . . [T]he highly complex laws needed to 
constitute the bankruptcy courts and regulate the rights of debtors and 
creditors also underscore the need to jealously guard the bankruptcy process 
from even slight incursions and disruptions brought about by state malicious 
prosecution actions.
 
 
Id. at 
914. Even what may be slight incursions could very well collectively and over 
time, with fifty different jurisdictions considering them, even in a 
well-intentioned fashion, undermine the uniformity and objectives of the federal 
bankruptcy system.
            
Fuqua argues that Congress intended state law to supplement this area of 
bankruptcy. I disagree and conclude that, based on the remedial scheme 
established and the need for uniformity, Congress intended to preempt state 
common law claims based on malicious proceedings in a bankruptcy case to avoid 
such claims presenting “an obstacle to the accomplishment and execution of the 
full purposes and objectives of Congress” and to avoid undermining the 
constitutional mandate of “uniform Laws on the subject of Bankruptcies 
throughout the United States.” Hines, 312 U.S. at 67. See U.S. Const. art. I, § 8.
V. Preemption of Jurisdiction
            
Ordinarily, federal preemption operates as an affirmative defense to a 
plaintiff’s state law claims, but does not deprive a state court of jurisdiction 
over those claims. Mills v. Warner Lambert Co., 157 S.W.3d 424, 427 (Tex. 
2005) (citing Metro. Life Ins. Co. v. Taylor, 481 U.S. 58, 63 (1987)). 
There are, however, situations in which federal law may preempt conflicting 
state-court jurisdiction. Longshoremen, 476 U.S. at 388. See also 
Gorman v. Life Ins. Co. of N. Am., 811 S.W.2d 542, 547 (Tex. 1991). State 
court jurisdiction is affected only when Congress requires that claims be 
addressed exclusively in a federal forum. Mills, 157 S.W.3d at 425 
(citing San Diego Bldg. Trades Council v. Garmon, 359 U.S. 236, 242-45 
(1959)). Whether a trial court has subject matter jurisdiction is a legal 
question we review de novo. Tex. Dep’t of Parks & Wildlife v. 
Miranda, 133 S.W.3d 217, 226 (Tex. 2004); Mayhew v. Town of 
Sunnyvale, 964 S.W.2d 922, 928 (Tex. 1998). 
 
            
It is clearly within Congress’ powers to establish an exclusive federal 
forum to adjudicate issues of federal law in a particular area that Congress has 
the authority to regulate under the Constitution. Whether it has done so in a 
specific case is the question that must be answered when a party claims that a 
state court’s jurisdiction is pre-empted. 
 
 
Longshoremen, 476 U.S. at 
388 (citation omitted). See Mills, 157 S.W.3d at 427; Gorman, 811 
S.W.2d at 546. The United States Supreme Court refers to the divesture of 
state-court jurisdiction by federal law as “Garmon preemption.” 
Longshoremen, 476 U.S. at 388-89, 391. 
            
The bankruptcy courts’ jurisdiction is established by sections 157 and 
1334 of title 28 of the United States Code. Celotex, 514 U.S. at 307. 
Section 1334(a) states that “the district courts shall have original and 
exclusive jurisdiction of all cases under title 11,” which refers to the 
bankruptcy petition itself. Wood v. Wood (In re Wood), 825 F.2d 90, 92 
(5th Cir. 1987). Section 1334(b) states that “the district courts shall have 
original but not exclusive jurisdiction of all civil proceedings arising under 
title 11, or arising in or related to cases under title 11.” Therefore, although 
Congress expressed its intent to create an exclusive federal forum with respect 
to cases “under title 11,” “[i]n other matters arising in or related to title 11 
cases, unless the Code provides otherwise, state courts have concurrent 
jurisdiction.” Sanders v. City of Brady (In re Brady, Tex., Mun. Gas 
Corp.), 936 F.2d 212, 218 (5th Cir. 1991).
            
The parties do not dispute that Fuqua’s malicious prosecution claim, or 
the adversary proceeding upon which it is based, is anything more than merely 
“related to” a title 11 case, as opposed to a case “under title 11.” Thus, this 
is not the type of case for which Congress provided explicit forum-preempting 
language. See, e.g., Mills, 157 S.W.3d at 427-28 (referring to the 
holding in Gorman, 811 S.W.2d at 547-49, that state courts have no 
jurisdiction over certain ERISA claims because 29 U.S.C. § 1132(e)(1) provides 
that “the district courts of the United States shall have exclusive jurisdiction 
of civil actions under this subchapter. . . .”). 
            
The lack of explicit forum-preempting language regarding Fuqua’s claim 
does not mean, however, that Congress did not intend to establish an exclusive 
federal forum for claims based on abuse of the bankruptcy process. “‘[T]he 
presumption of concurrent jurisdiction can be rebutted by an explicit statutory 
directive, by unmistakable implication from legislative history, or by a clear 
incompatibility between state-court jurisdiction and federal interests.’” 
Mills, 157 S.W.3d at 428 (quoting Tafflin v. Levitt, 493 U.S. 455, 
459-60 (1990)). For instance, in Garmon, the U.S. Supreme Court held that 
because Congress had enacted such a “complex and interrelated federal scheme of 
law, remedy, and administration” in the National Labor Relations Act, “due 
regard for the federal enactment requires that state jurisdiction must yield.” 
359 U.S. at 243-44 (citation omitted). Similarly, in Longshoremen, the 
Court held that neither state courts nor federal courts had jurisdiction to hear 
claims over which Congress intended the National Labor Relations Board to have 
exclusive jurisdiction. 476 U.S. at 390-91. But these cases dealt with the 
unique federal scheme of the National Labor Relations Act and Congress’s intent 
that both state and federal courts “defer to the exclusive competence of the 
National Labor Relations Board” to avert “the danger of state interference with 
national policy.” Longshoremen, 476 U.S. at 390 (quoting Garmon, 
359 U.S. at 245). 
            
Assuming, as the parties concede, that this claim is “related to” a 
bankruptcy case, the claim is one of many for which Congress declined to provide 
exclusive jurisdiction in the federal courts. See 28 U.S.C. §§ 1334(b), 
157 (establishing the federal courts’ original, but not exclusive, jurisdiction 
over “related to” matters and “core proceedings”). The jurisdictional scheme 
created by Congress thus prevents me from concluding that Congress intended to 
create an exclusive federal forum for the claims made in an adversary 
proceeding. Consequently, only a preemption argument related to the choice of 
law is viable.
VI. Conclusion 
            
Because Congress created an extensive remedial scheme in the Bankruptcy 
Code to address abuse of process in bankruptcy proceedings, and because the 
constitutional goal of “uniform [bankruptcy] laws . . . throughout the United 
States” could be undermined by allowing state law malicious prosecution actions 
based on the filing of an adversary proceeding, I would hold that such a claim 
is preempted by federal bankruptcy law. Preemption operates in this case not to 
deprive the state court of jurisdiction, but as an affirmative defense to 
Fuqua’s claims. Congress intended to supersede state law claims for malicious 
prosecution of the bankruptcy process, not to divest state courts of 
jurisdiction over such claims. I would affirm the court of appeals’s judgment 
that the district court erred in dismissing this case for lack of subject matter 
jurisdiction, but I would reverse the court of appeals’s judgment that a Texas 
common law malicious prosecution claim may be predicated on conduct that 
occurred entirely in the bankruptcy court and which the Bankruptcy Code’s 
extensive remedial and sanction provisions address.
 
            
_________________________________
            
J. Dale Wainwright
            
Justice
 
 
OPINION DELIVERED: January 9, 
2009







[1] 
The elements to prove a malicious criminal prosecution are: (1) a criminal 
prosecution commenced against the plaintiff, (2) the defendant initiated or 
procured that prosecution, (3) the prosecution terminated in the plaintiff’s 
favor, (4) the plaintiff was innocent of the charges, (5) the defendant lacked 
probable cause to initiate the prosecution, (6) the defendant acted with malice, 
and (7) the plaintiff suffered damages. Kroger Tex. Ltd. P’ship v. 
Suberu, 216 S.W.3d 788, 792 n.3 (Tex. 2006).
                
    The elements to prove the malicious prosecution of a 
civil claim are: (1) the institution or continuation of civil proceedings 
against the plaintiff, (2) by or at the insistence of the defendant, (3) malice 
in the commencement of the proceeding, (4) lack of probable cause for the 
proceeding, (5) termination of the proceeding in the plaintiff’s favor, and (6) 
special damages. Tex. Beef Cattle Co. v. Green, 921 S.W.2d 203, 207 (Tex. 
1996).

[2] 
Under our pleading rules, Graber’s assertion of preemption as a plea to the 
jurisdiction was sufficient to apprise Fuqua of the character of proof he would 
need to address the preemption issue, whether it be defensive or jurisdictional 
in nature. Tex. R. Civ. P. 94. 
See Gorman v. Life Ins. Co. of N. Am., 811 S.W.2d 542, 546 n.8 (Tex. 
1991).

[3] 
Congress has accommodated state police power to a limited degree in bankruptcy 
proceedings. For example, known as the “police power” exception to the automatic 
stay, the Bankruptcy Code states that filing a petition does not operate as a 
stay of the commencement or continuation of an action or proceeding by a 
governmental unit to enforce such governmental unit’s police and regulatory 
power, other than enforcement of a money judgment. 11 U.S.C. § 362(b)(4).
 

[4] 
The Court’s indication that federal preemption of state law cannot be based on 
the absence of explicit preemption language in federal law (called 
“congressional silence”) is curious. See ___ S.W.3d ___. Both the field 
and conflict preemption doctrines take effect only when such silence 
exists.

[5] 
Rule 9011 provides sanctions for frivolous and harassing filings:
 
(b) Representations to the Court. By presenting to the 
court (whether by signing, filing, submitting, or later advocating) a petition, 
pleading, written motion, or other paper, an attorney or unrepresented party is 
certifying that to the best of the person's knowledge, information, and belief, 
formed after an inquiry reasonable under the circumstances– 
                
    (1) it is not being presented for any improper 
purpose, such as to harass or to cause unnecessary delay or needless increase in 
the cost of litigation; 
                
    (2) the claims, defenses, and other legal contentions 
therein are warranted by existing law or by a nonfrivolous argument for the 
extension, modification, or reversal of existing law or the establishment of new 
law; 
                
    (3) the allegations and other factual contentions have 
evidentiary support or, if specifically so identified, are likely to have 
evidentiary support after a reasonable opportunity for further investigation or 
discovery; and 
                
    (4) the denials of factual contentions are warranted 
on the evidence or, if specifically so identified, are reasonably based on a 
lack of information or belief. 
 
(c) Sanctions. If, after notice and a reasonable 
opportunity to respond, the court determines that subdivision (b) has been 
violated, the court may, subject to the conditions stated below, impose an 
appropriate sanction upon the attorneys, law firms, or parties that have 
violated subdivision (b) or are responsible for the violation.
 
                
    (1) How Initiated
                
    (A) By Motion. A motion for sanctions under this rule 
shall be made separately from other motions or requests and shall describe the 
specific conduct alleged to violate subdivision (b). . . If warranted, the court 
may award to the party prevailing on the motions the reasonable expenses and 
attorney’s fees incurred in presenting or opposing the motion. 
 
* * *
                
    (2) Nature of Sanction: Limitations. A sanction 
imposed for violation of this rule shall be limited to what is sufficient to 
deter repetition of such conduct or comparable conduct by others similarly 
situated . . . [t]he sanction may consist of, or include, directives of a 
nonmonetary nature, an order to pay a penalty into court, or, if imposed on 
motion and warranted for effective deterrence, an order directing payment to the 
movant of some or all of the reasonable attorneys’ fees and other expenses 
incurred as a direct result of the violation.
 
Fed. R. Bankr. P. 9011(b)-(c). 

[6] 
See Miles v. Okun (In re Miles), 430 F.3d 1083, 1089 (9th Cir. 2005); 
Glannon, 261 B.R. at 264; Koffman v. Osteoimplant Tech., Inc., 182 
B.R. 115, 123-28 (D. Md. 1995); Mason v. Smith, 672 A.2d 705, 708 (N.H. 
1996); Sarno v. Thermen, 608 N.E.2d 11, 18 (Ill. App. Ct. 1992); Gene 
R. Smith Corp. v. Terry’s Tractor, Inc., 257 Cal. Rptr. 598, 600 (Cal. Ct. 
App. 1989). 
                
    A minority of courts have refused to adopt this 
reasoning. See Paradise Hotel Corp. v. Bank of Nova Scotia, 842 F.2d 47, 
52 (3d Cir. 1988) (reasoning that because section 303(i) is not available where 
debtor has converted a Chapter 7 proceeding to a Chapter 11 proceeding, it 
cannot be an exclusive remedy for abuse of process and malicious prosecution 
claims); R.L. LaRoche, Inc. v. Barnett Bank of S. Fla., 661 So. 2d 855, 
859-64 (Fla. Dist. Ct. App. 1995). However, Paradise Hotel has been 
distinguished as the minority view. See Shiner v. Moriarty, 706 A.2d 
1228, 1238 (Pa. Super. Ct. 1998). Further, a subsequent member of the court that 
issued R.L. LaRoche identified the decision’s minority status in light of 
the development of the law in this area and encouraged his court to recede from 
that position. Mullin v. Orthwein, 772 So. 2d 30, 31 (Fla. Dist. Ct. App. 
2000) (Gross, J., concurring) (distinguishing other cases in line with it as not 
being based on conduct occurring in bankruptcy).